UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ NOV 16 2017 ★

BROOKLYN OFFICE

-------------------------------------------------------- x

EARL WRIGHT,

                      Petitioner,

         -against-

SUPERINTENDENT T. GRIFFIN,

                     Respondent.

-------------------------------------------------------- x

MEMORANDUM & ORDER

14-CV-7559 (ENV)

VITALIANO, D.J.

     A state prisoner, petitioner Earl Wright appears *pro se* seeking a writ of habeas corpus,

filed pursuant to 28 U.S.C. § 2254. (ECF No. 1 ("Pet.").) For the reasons set forth below, the

writ is denied and the petition is dismissed.

## Background[1]

     At approximately 4:30 a.m. on July 29, 2005, Honoria Cuenca, who lived with her

boyfriend, Guido Arevalo,[2] and their two children in Queens, left her apartment to use a pay

phone in front of a laundromat that was adjacent to her building. (Trial Transcript, May 11-13,

17, 18, 20, 24, 2010 ("Tr."), 281-82, 291-93, ECF Nos. 7-2 to 7-6.) Her errand was ordinary

enough: to call Arevalo, to ask when he would be home, and to go back to the apartment. (*Id.*)

     Like many multiple dwellings in New York City, exterior exit doors are self-locking.

That was the case both with the door leading from the exterior of Cuenca's building to a

vestibule and with the door leading from the vestibule to the street. (Tr. 287-88.) When Cuenca

---

[1] Because Wright was convicted, pertinent facts are recited in the light most favorable to the
verdict. *See Garbutt v. Conway*, 668 F.3d 79, 80 (2d. Cir. 2012).

[2] Although Cuenca and Arevalo are not legally married to each other, at the time of the trial, they
had been living together as a family for 15 years. (Tr. 281-82, 332.) Arevalo will, at times, be
identified as Cuenca's husband.

set out to phone her husband, the inner vestibule door locked behind her. (Tr. 293.) The outer door, due to a malfunction, may have failed to close completely as Cuenca left the building. (Tr. 287.) In any event, at trial, Cuenca could not recall whether the outer door closed or locked when she went outside to use the phone. (Tr. 293-94.)

After completing the phone call, Cuenca returned to her building. (Tr. 296.) Inside the vestibule, but short of the inner door, she was overtaken by a male assailant. (Tr. 296.) He grabbed her, covered her mouth and held "something cold" to her neck that she "thought . . . was a knife" (she never actually saw the object during the assault). (Tr. 296-97, 302.) Threatening to harm her with the object that he held to her neck, the assailant ordered Cuenca not to scream, choked her with his hands and threw her to the floor. (Tr. 297-98.) Despite Cuenca's struggles, he undid her shorts and underwear, pushed her face to the side and inserted his fingers into her vagina and then penetrated her vagina with his penis. (Tr. 297-300.) Once the sexual assault was finished, the assailant forcefully removed a necklace and anklet from his victim. (Tr. 300-01.) As he darted out, the assailant told Cuenca to return to her apartment, not to turn around and brazenly warned her that "next time" she "should be careful." (Tr. 300-01.)

When Arevalo returned from work, nearly an hour after the assault, Cuenca told him that she had been mugged, because she was too ashamed to tell him the truth. (Tr. 303, 337.) He called the police and then went to the vestibule where he found a pen on the floor. (Tr. 338-39.) He turned the pen over to the police when they arrived. (Tr. 338-40.) Cuenca was then transported by ambulance to Elmhurst General Hospital, where a sexual assault evidence collection kit was taken by Elmore Siong, a physician's assistant. (Tr. 304-05, 340, 361-62, 385-86.) Siong reported that he had observed various injuries: bruises on her inner thighs; abrasions on her cervix, neck and back; and tenderness to her neck and trachea. (Tr. 377-84, 391-94.) At

2

trial, Siong offered his observations and his medical opinion that the injuries were consistent with sexual assault. (Tr. 394.)

On July 30, 2005, the Office of Chief Medical Examiner ("OCME") received the sexual assault kit taken from Cuenca at the hospital. (Tr. 416, 430.) The vaginal swab obtained from Cuenca contained sperm. (Tr. 432.) Because Arevalo and Cuenca had sexual relations less than 72 hours prior to the rape, he submitted to a buccal swab. (Tr. 305-06, 340-41.) The husband's buccal swab was received by OCME on August 3, 2005. (Tr. 430.)

On a more traditional investigatory track, the victim tried to describe and identify the assailant. Cuenca told the police that the man who raped her was a "[b]lack man . . . 35 or 40 years old . . . like from the Dominican Republic like Sammy Sosa . . . [and] a little taller than [her]." (Tr. 307-08.) On at least three occasions, Cuenca went with Detective James O'Boyle, who worked at the Queens Special Victims office, to a precinct house to look at photos. (Tr. 220, 227, 308.) During the course of those sessions, she looked at approximately 3,000 photos, but was unable to identify her assailant. (Tr. 227-28.) She explained that she could not identify the attacker because she "didn't really look at his face" during the incident. (Tr. 309.) After Cuenca failed to identify her attacker, the case was closed pending DNA results. (Tr. 228.)

The case lay dormant until a lead turned the spotlight on Wright. (*Id.*) The case was reopened in February 2008. (*Id.*) As part of the reopened investigation, Wright's DNA was compared to the sperm sample taken from Cuenca's vaginal swab. (Tr. 447.) According to Nana Lamuse-Smith, an OCME criminalist, who analyzed the results of this DNA testing and who was qualified at Wright's trial as an expert witness in the field of forensic biology, the DNA profile of the major contributor to the rape kit sample taken from Cuenca, in her opinion, matched that of Wright. (Tr. 448-49.)

In a backfire strategy, petitioner sought to stop the trial before it got started. He moved "to dismiss the indictment for denial of the right to a speedy trial pursuant to CPL 30.20; Civil Rights Law Sec. 12; USCA Const. Amend. 6, 14, CPL 30.30." (ECF No. 7 at 6 ("30.30 Motion").) Supreme Court, Queens County denied the motion on October 29, 2009. (*Id.*) Supreme Court calculated that, "at best the People would be charged with the 14 days of pre-readiness delay and . . . no more than 82 days [of post-readiness delay], a period considerably less than that which would be needed under either CPL 30.20, CPL 30.30(1)(a) or CPL (2)(a)." (*Id.* at 10.) The effort to avert trial had failed.

Trial began on May 11, 2010 before Justice Michael B. Aloise, sitting with a jury. (Tr. 1.) At his option, Wright represented himself, with the aid of stand-by counsel appointed by the trial court. (Tr. 1-2.) Just short of two weeks later, on May 24, 2010, the jury found Wright guilty of rape in the first degree (N.Y. Penal Law § 130.35[1]), robbery in the first degree (N.Y. Penal Law § 160.15[3]), burglary in the first degree (N.Y. Penal Law § 140.15[3]), and sexual abuse in the first degree (N.Y. Penal Law § 130.65[1]). (Tr. 554-55.) On June 21, 2010, Justice Aloise sentenced petitioner, in principled part, to consecutive terms of 25 years on the rape, robbery and burglary counts and seven years on the sexual abuse count. (Sent. Tr. 14-15., ECF No. 7-6.)

On July 2, 2010, petitioner appealed his conviction to the Appellate Division, Second Department, including some points addressed to the peculiar power of the Appellate Division to modify an excessive sentence in the interests of justice. (Notice of Appeal, July 2, 2010 ("Appeal Notice"), ECF No. 7 at 1; Brief for Defendant-Appellant, April 20, 2012 ("Appellant Br."), ECF No. 7 at 82-131.) Petitioner, now represented by counsel, raised five claims: (1) the convictions for robbery in the first degree and burglary in the first degree should be reduced to

robbery in the third degree and burglary in the third degree, because there was insufficient evidence to prove that Wright threatened the use of a dangerous instrument, (2) the evidence underpinning the burglary conviction was insufficient because there was no proof that the vestibule was a "dwelling," (3) his speedy trial motion was improperly denied, (4) deprivation of a fair trial due to prosecutorial misconduct and (5) the sentence imposed was excessive. (Appellant Br.) Additionally, Wright raised three more claims in a *pro se* supplementary brief: (1) the wrongful admission of evidence that the trial court had previously ordered precluded, (2) the People's failure to comply with their CPL § 240.20 discovery obligation, and (3) improprieties relating to the DNA evidence introduced at trial. (Defendant-Appellant *pro se* Supplemental Brief, ("Appellant Suppl. Br."), ECF Nos. 7 at 207-23, 7-1 at 1-17.)

During the pendency of his direct appeal, on September 22, 2011, petitioner filed a *pro se* motion to vacate the judgment of conviction in Supreme Court. (ECF No. 7 at 11-12 ("Motion to Vacate Judgment").) In line with CPL § 440.10(2)(b), that motion was denied on January 12, 2012, because the claims it presented could, and must, be resolved on direct appeal. (EFC No. 7 at 36-39, Memorandum Denying CPL § 440.10 Motion, January 12, 2012 ("440.10 Denial").)

Wright fared no better on direct appeal. The Second Department affirmed the judgment on October 9, 2013, without modification. *People v. Wright*, 110 A.D.3d 836, 836, 972 N.Y.S.2d 660 (2d Dep't 2013). The state court found the insufficiency of the evidence claim to be "unpreserved for appellate review" and, in any event, meritless. *Id.* The same fate befell the claim regarding misconduct in the prosecutor's opening and closing arguments. *Id.* at 837. Finding that Wright's sentence was not excessive, it was not disturbed. *Id.* Lastly, in a blurred ruling, the Second Department held that the remaining contentions raised in Wright's *pro se*

supplemental brief, as well as those raised in counsel's main brief, were "either unpreserved for appellate review and, in any event, without merit, or based on matter dehors the record." *Id.*

Leave to appeal to the Court of Appeals was denied on December 27, 2013. *People v. Wright*, 22 N.Y.3d 1045, 4 N.E.3d 390, 981 N.Y.S.2d 378 (2013).[3]

About a year after leave was denied, on December 29, 2014, Wright filed for federal habeas relief. Read liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007), his petition presses eight grounds for relief: (1) a violation of the speedy trial rules, (2) prosecutorial misconduct relating to statements made during opening and closing arguments, (3) use of evidence precluded by state law (CPL § 710.30), (4) violation of pretrial disclosure rights under state law and *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), (5) insufficiency of the evidence, (6) the sentence was excessive and improperly ran consecutively, rather than concurrently, in violation of the Double Jeopardy Clause, (7) the People's use of false and misleading evidence and (8) prejudice from the People's violation of various rules of professional conduct. (Pet.)[4]

---

[3] "Because the Court of Appeals denied leave to appeal, this Court must look back to the last reasoned decision," which in this case is the Appellate Division's ruling, on direct appeal, affirming petitioner's judgement of conviction. *Harvey v. Mazzuca*, No. 04 Civ. 8019 (PKC), 2006 WL 1529325, at *7 (S.D.N.Y. June 5, 2006) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 802, 111 S. Ct. 2590, 2594, 115 L. Ed. 2d 706 (1991)).

[4] A district court may entertain a prisoner's petition for a writ of habeas corpus "only on the ground that he is *in custody* in violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a) (emphasis added); *see also Nowakowski v. New York*, 835 F.3d 210, 215 (2d Cir. 2016) ("In order for a federal court to have jurisdiction over a habeas petition, the petitioner must be 'in custody pursuant to the judgment of a State court' at the time that petition is filed." (quoting 28 U.S.C. § 2254(a))). Wright is currently incarcerated in Green Haven Correctional Facility. *See* NYDOCCS, Inmate Lookup, http://nysdoccslookup.doccs.ny.gov/ (last visited November 1, 2017).

## Standard of Review

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a writ of habeas corpus shall not issue with respect to any claim that was adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented" in state court. 28 U.S.C. § 2254(d); *see also Gutierrez v. McGinnis*, 389 F.3d 300, 304 (2d Cir. 2004) (describing this standard as "AEDPA deference"). AEDPA's deferential review applies whenever a state court disposes of a state prisoner's federal claim on the merits, regardless of whether it gives reasons for its determination or refers to federal law in its decision. *See Harrington v. Richter*, 562 U.S. 86, 100, 131 S. Ct. 770, 785, 178 L. Ed. 2d 624 (2011); *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5, 99 S. Ct. 2781, 2796 n.5, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment)). Review under AEDPA "demands that state-court decisions be given the benefit of the doubt." *Hardy v. Cross*, 565 U.S. 65, 66, 132 S. Ct. 490, 491, 181 L. Ed. 2d (2011) (per curium) (quoting *Felkner v. Jackson*, 562 U.S. 594, 598, 131 S. Ct. 1305, 1307, 179 L. Ed. 2d 374 (2011) (per curium)). Where AEDPA deference applies, "a state court's findings of fact are 'presumed to be correct' unless rebutted 'by clear and convincing evidence.'" *Drake v. Portuondo*, 553 F.3d 230, 239 (2d Cir. 2009) (quoting 28 U.S.C. § 2254(e)(1)).

For the purposes of federal habeas review, "clearly established Federal law" "refers to the holdings, as opposed to the dicta, of [Supreme Court] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412, 120 S. Ct. 1495, 1523, 146 L. Ed. 2d 389 (2000). A state court decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), if it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413. A state court decision involves an "unreasonable application" of clearly established federal law if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* In construing and applying federal law, even erroneous state court decisions, if deemed reasonable, will survive habeas review. *See id.* at 411. The state court decision need not be "so far off the mark as to suggest judicial incompetence" before habeas relief may be granted. *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (quoting *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 889 (3d Cir. 1999)). However, "[a] federal court may reverse a state court ruling only where it was 'so lacking in justification that there was no possibility for fairminded disagreement.'" *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (alterations omitted) (quoting *Harrington*, 562 U.S. at 103). "'If this standard is difficult to meet'-and it is-'that is because it was meant to be.'" *Burt v. Titlow*, 134 S. Ct. 10, 16, 187 L. Ed. 2d 348 (2013) (quoting *Harrington*, 562 U.S. at 102). Federal courts should not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunctio[n]' for which federal habeas review is the remedy." *Id.* (alteration in original) (quoting *Harrington*, 562 U.S. at 102).

## Discussion

I.     Prosecutorial Misconduct and Sufficiency of the Evidence.

Above all else, these two collective claims suffer from the same fundamental defect. The individual assignments of error they collect fall into two broad categories. The first, which was the second ground in the Petition, contends that Wright was deprived of a fair trial by the prosecutor's improper remarks in her opening and closing statements. (Pet. 8-10.) The second category, the fifth ground in the Petition, is that the evidence was insufficient to support the degree of robbery and burglary for which he was convicted (Pet. 15-16). Yet, since these claims were unpreserved for state review, they are procedurally barred from federal habeas review, and, with no viable excuse for the default, die at the threshold. *See infra* note 5.

That these claims are barred is in keeping with the fundamental precept of federal habeas relief that a federal court may not review a claim in a habeas petition if the decision of the state court rests on a state procedural rule that is "a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed." *Martinez v. Ryan*, 566 U.S. 1, 9, 132 S. Ct. 1309, 1316, 182 L. Ed. 2d 272 (2012). This requirement ensures that state court decisions "are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." *Id.*

With respect to these two sets of claims, the Appellate Division made plain that it was relying on New York's long-standing procedural bar created by the contemporaneous objection rule, codified at CPL § 470.05(2), for their rejection. Specifically, the Second Department held that Wright's claims "that the evidence was legally insufficient to support his convictions of robbery in the first degree and burglary in the first degree" and that "he was deprived of a fair

trial by certain remarks made by the prosecutor during the opening statement and on summation" were "unpreserved for appellate review." *Wright*, 110 A.D.3d at 836-37 (citing § 470.05(2)).

Of course, the contemporaneous objection rule is hardly a novel barrier to federal habeas relief. Far beyond New York, failure to preserve an issue for state appellate review by not raising the claim in the trial court by contemporaneous objection qualifies as an adequate and independent state law ground that bars a federal habeas court from reaching the merits of the claim. *See Wainwright v. Sykes*, 433 U.S. 72, 81-91, 97 S. Ct. 2497, 2503-09, 53 L. Ed. 2d 594 (1977) (concluding that Florida's contemporaneous objection rule is an independent and adequate state law ground). Court after court in this circuit have consistently followed suit. *See, e.g., Valdez-Cruz v. Racette*, No. 13 CV 03033 (JFB), 2014 WL 3795577, at *7 (E.D.N.Y. Aug. 1, 2014); *Jamison v. Smith*, No. 94 CV 3747 (FB), 1995 WL 468279, at *2 (E.D.N.Y. July 26, 1995).

Neither salve for the sting of its affirmance of his conviction, nor a new lifeline for petitioner to seek habeas review here, the Appellate Division did go on to hold, on an alternative basis, that these two claims advanced by Wright were substantively without merit, explaining that, "[i]n any event", the evidence "was legally sufficient to establish defendant's guilt . . . beyond a reasonable doubt" and that "the challenged remarks [of the prosecutor] were fair comment on the evidence, were permissible rhetorical comment, constituted a fair response to defense counsel's summation, or otherwise do not warrant reversal." *Wright*, 110 A.D.3d at 836-37.

Plainly, where, as here, the state court expressly relies on the dispositive quality of a state's procedural bar for its decision, the Supreme Court has assured that the state court "need not fear reaching the merits of a federal claim in an *alternative* holding . . .." *Harris v. Reed*, 489

U.S. 255, 264 n.10, 109 S. Ct. 1038, 1044 n.10, 103 L. Ed. 2d 308 (1989) (emphasis in original).

"By its very definition, the adequate and independent state ground doctrine requires the federal

court to honor a state holding that is a sufficient basis for the state court's judgment, even when

the state court also relies on federal law." *Id.* (citing *Fox Film Corp. v. Muller*, 296 U.S. 207,

210, 56 S. Ct. 183, 184, 80 L. Ed. 158 (1935)).

At bottom, then, the state court's reliance on the procedural bar could not be more clear.

That is precisely the foundation used by the Second Department to dispose of Wright's claims

directed at the sufficiency of the evidence and the remarks made by the prosecutor before the

jury. *See Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810 n.4 (2d Cir. 2000) (quoting *Glenn*

*v. Bartlett*, 98 F.3d 721, 724-25 (2d Cir. 1996)); *see also, e.g., Brown v. Perlman*, No. 07 Civ.

8672 (RMB) (AJP), 2008 WL 2009220, at *16-18 (S.D.N.Y. May 8, 2008). It is the death knell

for those claims in this habeas proceeding. Habeas relief on those grounds is denied for that

reason.[5]

For the sake of completeness, the Court observes that if the Appellate Division's

alternative ground had been the controlling ground for federal habeas review, the dismissal

would still result. The Appellate Division's alternative finding that these claims were meritless

---

[5] Petitioner's application fits into no exception to this rule. A procedural bar can be lifted only if the petitioner demonstrates (i) "cause for the default and prejudice", or (ii) "that failure to consider the claim will result in a miscarriage of justice." *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001); *see also Gray v. Netherland*, 518 U.S. 152, 162, 116 S. Ct. 2074, 2080, 135 L. Ed. 2d 457 (1996) (noting that a showing of "cause and prejudice" is needed to overcome a procedural bar); *Coleman v. Thompson*, 501 U.S. 722, 748-750, 111 S. Ct. 2546, 2564-65,115 L. Ed. 2d 640 (1991) (noting that a procedural bar may also be overcome by showing that it would result in a "fundamental miscarriage of justice" – i.e., when a petitioner is actually innocent). Wright has not attempted to "show cause" for the default or prejudice, nor has he come forward with evidence demonstrating that he is "actually innocent" for purposes of the "fundamental miscarriage of justice" exception. *See Aparicio*, 269 F.3d at 90. There is, moreover, nothing in the record that suggests that he could.

would have been a substantive decision entitled to AEDPA deference. *See Zarvela v. Artuz*, 364 F.3d 415, 417 (2d Cir. 2004); *see also, e.g., Dinh v. Rock*, No. 11 CV 2640 (JG), 2011 WL 6329699, at *4 (E.D.N.Y. Dec. 16, 2011).

To prevail on his claim of prosecutorial misconduct, Wright would have had to demonstrate that the prosecutor's statements during opening or closing arguments "so infected the trial with unfairness" that the resulting conviction is a denial of due process. *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S. Ct. 2464, 2471, 91 L. Ed. 2d 144 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S. Ct. 1868, 1871, 40 L. Ed. 2d 431 (1974)). Courts in this Circuit are instructed to look at "the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements" to determine if a denial of due process has occurred. *Floyd v. Meachum*, 907 F.2d 347, 355 (2d Cir. 1990) (quoting *United States v. Modica*, 663 F.2d 1173, 1181 (2d Cir. 1981)).

Even construing Wright's contentions on these points liberally, the arguably offensive comments by the prosecutor, considered in the totality of the circumstances of the evidence in the case, do not rise to the level that offends due process. The Appellate Division's conclusion to that effect, *Wright*, 110 A.D.3d at 837, especially when viewed deferentially, cannot be disturbed on federal habeas corpus review.

In like manner, the Second Department short-circuited Wright's sufficiency of the evidence challenge had its alternative merits holding been the basis of decision. The standard for determining whether the due process clause has been offended by an insufficiency of the evidence is clear and long-standing. A court must view the evidence in the light most favorable to the prosecution, and the petitioner is entitled to relief only if no rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791, 61 L. Ed. 2d 560 (1979).

Wright principally attacks the sufficiency of the evidence to uphold his burglary and robbery convictions. His argument pivots around the identification of the pen, found on the floor of the vestibule, as evidence that he threatened to use a dangerous instrument. New York law is crystal clear that a pen may qualify as a dangerous instrument. *People v. Molnar*, 234 A.D.2d 988, 988, 652 N.Y.S.2d 186, 186 (4th Dep't 1996); *People v. Ross*, 34 Misc. 3d 151(A), 951 N.Y.S.2d 88 (1st Dep't 2012); *DiStefano v. Sedita*, No. 11 CV 1125 (MKB), 2014 WL 349251, at *12 (E.D.N.Y. Jan. 31, 2014). In addition, a victim's testimony that she felt a weapon during the attack coupled with an instrument being located near the scene or on the defendant, is sufficient to establish that the defendant possessed a dangerous weapon. *See, e.g., People v. Pena*, 50 N.Y.2d 400, 407-08, 406 N.E.2d 1347, 1350-51, 429 N.Y.S.2d 410, 413-14 (1980); *People v. Lawrence*, 124 A.D.2d 597, 597-98, 507 N.Y.S.2d 739, 740 (2d Dep't 1986).

Cuenca testified that the petitioner held a "cold" object to her neck and the physician's assistant testified that her neck bore abrasions after the attack. Moreover, a pen was found on the vestibule floor, where the attack occurred. Wright's argument that this quantum of evidence does not constitute sufficient evidence of these crimes would fail under *de novo* review, much less the deferential review afforded here. Petitioner's merits argument, therefore, cannot justify issuance of the writ.

II.     Consecutive Sentencing.

The argument on this point in Wright's briefs appears to refine its focus in order to claim that the imposition of consecutive, rather than concurrent, sentences was not only improper under Penal Law § 70.25(2), but also violated his rights under the Double Jeopardy Clause of the

Fifth Amendment. (Reply 27-35, ECF No. 10.) *See Whalen v. United States,* 445 U.S. 684, 688, 100 S. Ct. 1432, 1436, 63 L. Ed. 2d 715 (1980) (explaining that "the Fifth Amendment guarantee against double jeopardy protects not only against a second trial for the same offense, but also against multiple punishments for the same offense" (citation and internal quotation marks omitted)).) On direct appeal, however, Wright argued simply that his sentence was excessive on account of the failure of the sentencing judge to enumerate all of the factors that state law required to be considered. (Appellant Br. 43-46.) Any such failures, of course, would be purely a state affair ruling out federal habeas review. But, given his *pro se* status, the petition will be liberally construed as amplified in Wright's reply papers.

At any rate, even assuming a federally-rooted claim of excessive sentencing was fairly presented to the Appellate Division, it dies in the starting gate. The Second Department found that the sentence was not only within the statutory maximum but that it also was not excessive. *See Wright,* 110 A.D.3d at 837 ("The sentence imposed was not excessive." (citing *People v. Suitte,* 90 A.D.2d 80, 455 N.Y.S.2d 675 (2d Dep't 1982))). Furthermore, regardless of whether the Appellate Division was correct that the sentence was not excessive under state law, it accurately prefigured the result under federal law – a claim will still not present a cognizable federal constitutional issue if the sentence was "within the range proscribed by state law." *White v. Keane,* 969 F.2d 1381, 1383 (2d Cir. 1992); *see also Izaguirre v. Lee,* 856 F. Supp. 2d 551, 570-71 (E.D.N.Y. 2012) (explaining that, when the imposed sentence is within the statutory range, "a claim of excessive punishment does not present a constitutional question necessary for habeas corpus reversal" (quoting *Underwood v. Kelly,* 692 F. Supp. 146, 152 (E.D.N.Y. 1988))); *Joseph v. Racette,* No. 12 CV 1693 (NGG), 2014 WL 1426255, at *9 (E.D.N.Y. Apr. 14, 2014).

Since there is no question that the sentence imposed on Wright falls within the sentencing range established by state law, habeas review is unavailable.

Finally, as suggested in the earlier discussion of petitioner's refocusing of this argument, the double jeopardy argument he now presses was never fairly presented for resolution nor appropriately exhausted in state courts. Rather, Wright's brief on direct appeal focused solely on the factors the judge considered and failed to cite federal cases or state cases that employed a double jeopardy analysis (Appellant Br. 43-46). *See Walker v. Artus*, 117 F. Supp. 3d 228, 235-36 (E.D.N.Y. 2015) (holding that petitioner's challenge was unexhausted, where his brief to the state appellate court raised only state law challenges, cited no federal cases, did not apply federal constitutional analysis, and did not rely on any state cases employing federal constitutional analysis); *Arroyo v. Lee*, 831 F. Supp. 2d 750, 763-64 (S.D.N.Y. 2011) (finding claim unexhausted where, on direct appeal, petitioner made no federal constitutional arguments, nor cited any federal cases regarding that claim). There is, moreover, nothing in the record to show, or even suggest, that Wright could somehow shoehorn this argument into any of the exceptions to the requirement that a claim be fairly presented in state court before it can be taken up as an issue upon application for federal habeas corpus relief. 28 U.S.C. § 2254(b)(1) (explaining that the "absence of available State corrective process" constitutes an exception to the exhaustion requirement); *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995) (noting that, due to the assumed availability of a New York law, which permits the challenge to a sentence any time after the entry of judgment, "there appears to be no reason to treat these unexhausted claims as exhausted" (citing *Duckworth v. Serrano*, 454 U.S. 1, 3, 102 S. Ct. 18, 19, 70 L. Ed. 2d 1 (1981) (per curiam))). With no exception excusing it, Wright's failure to present and exhaust this claim in state court is fatal. A writ of habeas corpus cannot issue grounded in petitioner's

contention that the consecutive sentences imposed by the trial court violated the double jeopardy provision of the Constitution.

III.    The Remaining Claims of Error.

Wright also presents a variety of grievances relating to the timing and conduct of the trial court that he contends, individually and collectively, denied him his constitutionally protected right to due process and a fair trial. Each was raised on direct appeal and was rejected by the Second Department as "either unpreserved for appellate review and, in any event, without merit, or based on matters dehors the record." *See Wright*, 110 A.D.3d at 837. When a state court holds that the claims are "'either unpreserved for appellate review or without merit,' the validity of the claim is preserved and is subject to federal review." *Fama*, 235 F.3d at 810. Claims are also preserved when the state court rejects them as "without merit, based on matter dehors the record, or [] forfeited." *Philips v. Brown*, Nos. 08 CV 2625 (FB), 08 CV 2626 (FB), 2011 WL 1984520, at *8 (E.D.N.Y. May 20, 2011) (alteration in original) (quoting *People v. Philips*, 30 A.D.3d 620, 621, 818 N.Y.S.2d 227, 228 (2d Dep't 2006)). All of these remaining claims, in short, are preserved for federal habeas review.

The first of this group of arguments is that petitioner's Sixth Amendment right to a speedy trial was violated when the trial court relied on its own recollection and notes to deny his speedy trial claim. (*See* Pet. 6-7.) The Supreme Court has instructed courts to approach speedy trial claims "on an ad hoc basis," identifying four factors that should guide a court's determination: (1) the "[l]ength of the delay"; (2) "the reason for the delay"; (3) "the defendant's assertion of his right"; and (4) "prejudice to the defendant" from the delay. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192, 33 L. Ed. 2d 101 (1972). No one factor is a necessary or sufficient condition to support a finding that a defendant's right to a speedy trial has been

16

violated. *Id.* at 533. Rather, "courts must still engage in a difficult and sensitive balancing process" to determine whether the right has been violated. *Id.*

The record tilts the board steeply against Wright. Less than two years passed between Wright's arraignment on June 5, 2008 and the start of his trial in May 2010. (*See* 30.30 Motion.) Moreover, in its October 29, 2009 order denying Wright's *pro se* CPL 30.20 motion, the state trial court found that, at most, 82 days of delay up until that point were attributable to the People, because many of the delays were caused by petitioner's own motions for new counsel, to proceed *pro se* and his efforts to avoid providing a DNA sample. (*Id.* at 7-10.) Consequently, that court denied his motion "to release [him] and dismiss [the indictment]" for alleged violations of his rights to a speedy trial. (*Id.*)

Although the state court's decision addressed state statutory speedy-trial rights, those findings, nevertheless, inform the federal constitutional issues weighed through the balancing test enunciated in *Barker*. In this inquiry, the state court's factual finding that, as of October 29, 2009, at most, 82 days of delay were attributable to the state, *see* (*Id.* at 10), is presumed to be correct because Wright has not provided clear and convincing evidence rebutting this presumption. *See* 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."); *Davis v. Kelly*, 316 F.3d 125, 127 (2d Cir. 2003) ("Because we must accept [the state court's finding of fact] that the delay [of over three years] in Davis' retrial is attributable to Davis' own actions, we cannot say that the [state court's] ruling that the delay did not violate the Sixth Amendment was 'an unreasonable application of' *Barker*."); *Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001).

Given the unrebutted factual findings of the state court and considering the severity of the crime and complexity of the case, including the fact that Wright represented himself *pro se*, the Court concludes that the length of delay (approximately two years) was not constitutionally offensive. Indeed, much longer delays have withstood constitutional attack. *See, e.g., Barker*, 407 U.S. at 533-36 (over five years); *United States v. Williams*, 372 F.3d 96, 112-13 (2d Cir. 2004) (nearly three years); *Garcia Montalvo v. United States*, 862 F.2d 425, 426 (2d Cir. 1988) (eight years); *Rayborn v. Scully*, 858 F.2d 84, 89 (2d Cir. 1988) (over seven years); *Jones v. Spitzer*, No. 01 CV 9754 (HB) (GWG), 2003 WL 1563780, at *43 (S.D.N.Y. Mar. 26, 2003) (over two and one-half years), *report and recommendation adopted*, 2005 WL 167605 (Jan. 25, 2005).

Furthermore, petitioner has failed to demonstrate any prejudice resulting from the delay as there has been no showing of dead or missing witnesses or lapses of memory. *See, e.g., Barker*, 407 U.S. at 534. Additionally, after the state court denied Wright's speedy trial motion without prejudice, he was explicitly offered the opportunity to resubmit transcripts of the court proceedings on which he based his motion. (30.30 Mot. at 10.) He did not seek to renew his motion. Moreover, the denial of his motion despite the unavailability of the transcripts was consistent with state law because the reasons for the delays were clear from the court files and parties' recollections. *See People v. Morris*, 151 A.D.2d 701, 701, 542 N.Y.S.2d 753 (2d Dep't 1989). The Court therefore concludes that the Second Department did not unreasonably apply the balancing test enunciated in *Barker*. This ground for relief is meritless and federal relief upon it is denied.

Wright next contends that he was deprived of a fair trial because the prosecution used evidence that was precluded under state law, CPL § 710.30, and under an implementing

preclusion order issued pretrial by a motion court (Griffin, J.) on October 15, 2008. (*See* Pet. 10-11; Preclusion Order, October 15, 2008 ("Preclusion Order"), 1-4, ECF No. 7 at 18-21.) Wright's interpretation of that order required the state to provide notice of any evidence that it intended to use at trial. But, his interpretation of that section, *see* (Pet. 10-11), is clearly erroneous because § 710.30 deals only with the notice that the People must give a defendant of his own statements to the police and of police arranged identifications. *See* N.Y. Crim. Proc. Law § 710.30(1). Accordingly, the trial judge explained that the preclusion order applied only to "statements allegedly made by [Wright] to law enforcement personnel." (Preclusion Order 3.) Given what New York law actually provides, unsurprisingly, Wright's petition does not specify what evidence he claims was received in violation of the prelusion order. Moreover, an analysis of the trial record reveals that no evidence falling under this statute was used at trial. Plainly, the state courts were not called upon to review the evidentiary ruling about which Wright complains, much less made a ruling that was contrary to, nor an unreasonable application of, federal law.

The third of these claims centers on alleged violations of CPL § 240.20 and of *Brady* because the state did not timely provide a DVD of evidence to Wright and disclosed only on the day of the trial that the People intended to call a DNA expert witness. (Pet. 12-13.) At the outset, Wright's allegation that evidence was disclosed late under a state statute does not merit federal habeas relief. *See Engle v. Isaac*, 456 U.S. 107, 119, 102 S. Ct. 1558, 1567, 71 L. Ed. 2d 783 (1982) ("A state prisoner is entitled to relief under 28 U.S.C. § 2254 only if he is held 'in custody in violation of the Constitution or laws or treaties of the United States.'"). Thus, he must establish that the late disclosure constituted a *Brady* violation.

In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either

to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97, 10 L. Ed. 2d 215 (1963). To establish a *Brady* violation, a petitioner must show that: 1) "the evidence at issue [was] favorable to the accused, either because it is exculpatory, or because it is impeaching"; 2) the evidence was suppressed by the State, either willfully or inadvertently; and 3) prejudice ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 1948, 144 L. Ed. 2d 286 (1999). Prejudice is satisfied when there is "a reasonable probability that the suppressed evidence would have produced a different verdict." *See id.* at 281. Moreover, if the defense received the evidence in time for its effective use at trial, the information has not been "suppressed" within the meaning of *Brady*, even if disclosure is not made until immediately before or during trial. *United States v. Douglas*, 525 F.3d 225, 245-46 (2d Cir. 2008).

The trial transcript shows that the late-disclosed DVD was not received into evidence or used by the prosecution during the trial. (Tr. 4.) In fact, the prosecutor stated during the course of the proceedings that the DVD was useless with respect to proving Wright's guilt or innocence. (*Id.*) Wright, apparently, did not find it of value to his defense either. Otherwise, the request to preclude the DNA expert from testifying was denied by the trial court, (*see* Tr. 129-35), and none of petitioner's conclusory allegations show that this denial was contrary to, or an unreasonable application of, *Brady* or other relevant Supreme Court precedent. *Brady* is violated only when earlier disclosure of the evidence would have changed the outcome of the trial. *See Strickler*, 527 U.S. at 281-82. Here, the evidence of Wright's guilt was substantial, and he has not attempted to offer proof that earlier disclosure of either the DVD or the assistance of a DNA expert would have impacted the outcome of the trial. Nor has he explained how his ability to prepare a defense was hindered by the late disclosure. Consequently, because Wright has failed to show the state court contravened or unreasonably applied *Brady* in rebuffing these

contentions, relief cannot be awarded on this ground. *McDay v. Napoli*, No. 09 CV 0454 (KAM) (MDG), 2013 WL 6231151, at *19 (E.D.N.Y. Dec. 2, 2013) (holding the state court's determination that no *Brady* violation had occurred as a result of late disclosure of evidence was not contrary to, nor an unreasonable application of, relevant Supreme Court precedent, where petitioner had the opportunity to cross examine the witness, there was substantial evidence showing his guilt and he had not shown that there was a reasonable possibility earlier disclosure would have changed the outcome of the case).

Grasping even further for straws, in his next claim, Wright argues, perhaps redundantly or more broadly, that he was "ambushed and sandbagged" when the People introduced evidence that had been precluded from trial. (Pet. 20-21.) He also claims that the prosecution "knowingly created false and misleading" DNA evidence for use at trial. Though asserted colorfully, petitioner has pointed to nothing in the record, nor provided any additional evidence, to support these claims. These allegations are wholly conclusory and do not show that the state court's denial of the claim on direct appeal was contrary to, or an unreasonable application of, clearly established Supreme Court precedent. As a result, this ground for relief is dismissed.

Lastly, Wright argues that his rights were violated when the prosecution failed to inform him and the court that there was "any evidence," presumably pertaining to his guilt, when the prosecution filed "illegal motions" and when he was provided with only five minutes to reply to one motion and 12 hours to reply to another. (Pet. 22-23.) Petitioner, however, has provided no factual support for these claims and makes no argument for how these allegations, even if true, support a finding that the Second Department's denial of those claims on direct appeal was contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Nor can the Court fathom any on its own. Thus, these claims, too, cannot support habeas relief.

## Conclusion

For the foregoing reasons, Wright is denied the issuance of a writ of habeas corpus and his petition is dismissed.

Since petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. *See* 28 U.S.C. § 2253(c)(2).

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45, 82 S. Ct. 917, 920-21, 8 L. Ed. 2d 21 (1962).

The Clerk of Court is directed to enter judgment accordingly, mail a copy of this Order to the petitioner and to close this case.

So Ordered.

Dated: Brooklyn, New York
November 1, 2017

/s/ USDJ ERIC N. VITALIANO
ERIC N. VITALIANO
United States District Judge